# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

| | |
|---|---|
| 60 East 42nd Street, Suite 4510 | Telephone: (212) 317-1200 |
| New York, New York 10165 | Facsimile: (212) 317-1620 |

April 8, 2019

**VIA ECF**

Hon. Barbara C. Moses
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

        **Re:** *Lopez v. Calle 8, LLC et al.*
           Case No. 18-cv-2173-BCM

Dear Judge Moses:

  This office represents Plaintiff Carlos Lopez ("Plaintiff") in the above-referenced matter. We submit this letter, together with Defendants' counsel, to respectfully request that the Court approve the Settlement Agreement (the "Agreement") reached between Plaintiff and Defendants Calle 8, LLC and Jeffrey Kadish (the "Defendants," and together with Plaintiff, the "Settling Parties") and so order the attached Stipulation and Proposed Order of Dismissal.

  The Settling Parties agreed to a negotiated Agreement after extensive settlement discussions that included a Court-ordered mediation with mediator Martin Oppenheimer, Esq. The proposed Agreement is attached hereto as **Exhibit A** and reflects a reasonable compromise over contested issues; it is the result of arms-length negotiations between the parties, who were adequately represented by counsel. We, therefore, ask the Court to approve the settlement, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

  The Settling Parties represent to the Court that while the Plaintiff believes that the settlement amount is less than what he would be entitled to if he prevailed at trial, and Defendants believe the settlement amount is more than what Plaintiff would recover if he prevailed at trial (Defendants deny Plaintiff's claims in their entirety), the settlement is nevertheless fair, as discussed herein.

**Background**

  Plaintiff began working at Defendants' restaurant in 1998. Plaintiff was paid a fixed salary of $812 per week from approximately March 2012 until on or about December 2017 and also received health insurance benefits. Plaintiff alleges that he was a food preparer at the restaurant and did not qualify for any exemption from overtime because his primary duty was not managing the kitchen and he lacked the requisite supervisory authority over other employees. On the other hand, Defendants maintain that Plaintiff was exempt from overtime as the daytime sous chef and kitchen manager because he had the keys to the restaurant and was responsible for opening the restaurant daily, setting the prep sheets for all employees during the day shift, supervising 2 to 5

*Certified as a minority-owned business in the State of New York*

back-of-house employees, and exercising discretion in advising the Executive Chef regarding the ordering of food for the restaurant.

According to Plaintiff, Plaintiff worked from approximately 6:00 a.m. until on or about 4:00 p.m. 3 days a week, from approximately 6:00 a.m. until on or about 5:00 p.m. 2 days a week and from approximately 12:00 a.m. until on or about 6:00 a.m. one extra day, six times per year (typically 52 to 58 hours per week). According to Defendants, Plaintiff worked approximately 45 hours per week, typically working Monday through Friday from 6:00 a.m. until 3:00 p.m., and Defendants produced time records supporting their assertions.

Plaintiff contends that he was improperly paid a fixed weekly base salary by Defendants, and therefore brought this action seeking to recover unpaid minimum wages, overtime wages, spread of hours, liquidated damages, interest, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650, *et seq*., and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. Defendants maintain that Plaintiff was an exempt, managerial employee and paid properly for all hours worked.

After engaging in targeted discovery, analyzing time and payroll records, calculating potential damages, and partaking in protracted negotiations that culminated in a mediation session with the Settling Parties present and participating, the parties agreed on the settlement amount of $65,000. This settlement amount reflects a fair compromise of disputed issues and avoids potentially significant and unanticipated burdens and expenses in establishing the parties' respective positions through a trial, as well as issues concerning the Settling Parties' ability to pay and/or withstand a greater judgment.

**Settlement**

The Settling Parties have agreed to resolve this action for the total sum of $65,000.00 which will be paid as outlined in **Exhibit A**. Plaintiff alleges he is entitled to back wages of approximately $45,066.00. Plaintiff estimates that had he recovered in full for his claims, he would be entitled to approximately $133,801.99, which represents alleged back wages, liquidated damages, statutory penalties, and pre- and post-judgment interest, but excludes attorneys' fees and costs. A copy of Plaintiff's damages chart, breaking down each amount sought from Defendants, is attached as "**Exhibit B**."

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement

will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The Agreement is fair to the Plaintiff. Plaintiff has been represented by counsel throughout this lawsuit and has made an informed decision to settle the action prior to trial, without incurring further costs or encumbrance of a trial and a possible appeal. The Sixty-Five Thousand Dollars ($65,000.00) that Plaintiff will be receiving accounts for all alleged unpaid minimum and overtime wages that he could have potentially recovered at trial, as well as attorneys' fees, and exceeds the amount of unpaid wages and overtime pay that Plaintiff alleges he is owed. Moreover, Plaintiff acknowledges that there is a risk in order to prevail in this matter, including, but not limited to: establishing alleged hours worked, establishing that he was misclassified as exempt throughout the time period at issue, a delay of payment if the parties were to proceed with the litigation, a risk of an adverse finding, the delay in a potential appeal, and a concern regarding Defendants' ability to pay and/or withstand a significant judgment.

Furthermore, the Agreement is the product of arm's-length bargaining between experienced counsel that took place over many months and involved the assistance of a third-party mediator following the exchange of all relevant documents. Thus, there is a presumption of fairness and no suggestion of fraud or collusion between the parties or their counsel. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in an arm's length negotiations between experienced, capable counsel after meaningful discovery."). Since the Agreement reflects a reasonable compromise over issues that were vigorously contested, the Court should approve the settlement. *See* Hernandez v. Merrill Lynch & Co., No. 11 Civ. 8472, 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement.") (citation omitted).

The Agreement complies with the Second Circuit's decision in Cheeks and does not present any particular concerns raised by Cheeks. *See* Cheeks, 769 F.3d 199; Gonzales v. Lovin Oven Catering of Suffolk, Inc., No. 14 Civ. 2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (finding that Cheeks highlighted the potential for abuse in settlements with overbroad general releases and confidentiality provisions). For example, the Agreement does not contain any confidentiality provision. The Agreement does contain general releases; however, such provisions are permissible in FLSA settlements where the defendants no longer employ the plaintiff, competent counsel for both sides negotiated the releases, and the releases are mutual. *See* Khan v. Young Adult Institute, Inc., 18 Civ. 2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (citing cases).

This Court has approved mutual general releases in FLSA matters. *See, e.g.,* Plizga v. Little Poland Restaurant Inc., 15-cv-08820 (BCM), 2016 WO 9307474 (S.D.N.Y. July 18, 2016); Chauca v. Abitino's Pizza 49th Street Corp., 15-cv-06278 (BCM), 2016 WL 3647603 (S.D.N.Y. June 29, 2016); Cionca v. Interactive Realty*, LLC*, 15-CV-05123 (BCM), 2016 WL 3440554

(S.D.N.Y. June 10, 2016). Mutual general releases in FLSA settlement agreements routinely have been granted by several other courts in the Second Circuit as well. *See, e.g.,* Loweth v. ISK Systems, LLC, 2:18-cv-05543 (SJF) (E.D.N.Y. Feb. 7, 2019) (ECF No. 13); Daniels v. Babette Haddad, No. 17-cv-8067, No. 18-cv-1144 (RA), 2018 WL 6713804 (S.D.N.Y. Dec. 17, 2018); Khan, 2018 WL 6250658; Coleman v. Defranco Pharmacy, Inc., 17 Civ. 8340 (HBP), 2018 WL 3650017 (S.D.N.Y. Aug. 1, 2018); Romero v. Fluff N Fold Laundry Services LLC, 15 Civ. 9535 (HBP), 2018 WL 2768642 (S.D.N.Y. June 8, 2018); Abreau v. Glenda Food Corp., 17 Civ. 2006 (HBP) (S.D.N.Y. May 25, 2018); Zheng v. Cromex, Inc., 17 Civ. 0168 (HBP), 2018 WL 1989566 (S.D.N.Y. April 25, 2018); Gonzales v. 27 W.H. Bake, LLC, 15 Civ. 4161 (HBP), 2018 WL 1918623 (S.D.N.Y. April 20, 2018); Ortiz v. My Belly's Playlist LLC, 16 Civ. 2924 (HBP), 2018 WL 1918611 (S.D.N.Y. April 19, 2018); Fuentes v. Benny's Burritos, Inc., 16 Civ. 6957 (HBP), 2018 WL 1635925 (S.D.N.Y. April 3, 2018); Bilbao v. LCS Enterprises, Inc., 17 Civ. 6744 (HBP), 2018 WL 1399199 (S.D.N.Y. March 19, 2018); Snead v. Interim HealthCare of Rochester, Inc., 286 F.Supp.3d 546 (W.D.N.Y. 2018) (EAW); Castanga v. Hampton Creek, Inc., No. 16-cv-760 (SJF) (E.D.N.Y. Jan. 23, 2017) (ECF No. 29); Scott v. Jencare Skin Farm, Inc., No. 16-cv-1773 (SJF) (E.D.N.Y. Nov. 14, 2016); Portillo v. H2O Car Wash & Exotic Detailing, LLC, No. 16-cv-4408 (SJF) (E.D.N.Y. Oct. 12, 2016) (ECF No. 10); Ramirez v. Santori Rest. Corp., No. 16-cv-4078 (SJF) (E.D.N.Y Oct. 7, 2016) (ECF No. 12); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13-cv-5008 (RJS), 2016 WL 922223 (S.D.N.Y. Feb. 3, 2016); Souza v. 65 St. Marks Bistro, 15-CV-327 (JLC), 2015 WL 7271747 (S.D.N.Y. Nov. 6, 2015).

Mutual general releases have been approved under certain circumstances because parties engage in settlement negotiations "in a wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unplead in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future." Souza, 2015 WL 7271747, at *5. A general release "make[] sense" where the settlement involves "former employees who have no ongoing relationship with the employer" in order to "bring complete closure" and may be approved by the court so long as the release is mutual. *Id.* Some courts have added a reciprocity requirement to ensure that there is reciprocity of parties in addition to reciprocity of claims in the mutual release. *See* Burgos v. Northeast Logistics, Inc., 15 cv 6850 (CBA) (CLP), 2018 WL 2376481, at *5 (E.D.N.Y. April 26, 2018); *see also* Garcia v. Good for Life by 81, Inc., 17-cv-07228 (BCM), 2018 WL 3559171 (S.D.N.Y. July 12, 2018). Where the case is not a class action, "one of the dangers of an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – is not present …." Cionca, 2016 WL 3440554, at *4. Thus, mutual releases of claims, including the release of non-FLSA claims, can be fair and reasonable where "the settlement was the result of a balanced negotiation, in which [the p]laintiffs were represented by able counsel." Lola, 2016 WL 922223, at *2.

Here, the mutual general releases contained in the Agreement are fair and reasonable. Initially, the general releases are truly mutual as they contain both a reciprocity of claims <u>and</u> reciprocity of parties. For example, Plaintiff only is releasing Defendants from all claims—not a

Hon. Barbara C. Moses
April 8, 2019
Page **5** of **6**

broad array of other persons or entities related to Defendants.[1]  Moreover, Plaintiff is no longer employed or engaged by Defendants, and the parties desire to resolve all issues and disputes between them to bring complete closure to their relationship.  Finally, counsel for both parties negotiated the releases and are experienced and competent in wage and hour litigation.

**Plaintiff's Attorneys' Fees are Fair and Reasonable**

Under the settlement, Plaintiff's counsel will receive $21,666.67, one third of the settlement amount and slightly more than double the lodestar amount.

The amount provided to the Plaintiff's counsel under the settlement is fair and reasonable as it is consistent with the range of fees typically awarded in cases in this Circuit. *See* Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also* Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit").  In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; *see also* McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiff's counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the Settling Parties' cooperative exchange of information, frequent negotiations, and participation at the Court-ordered mediation.

Attached hereto as **Exhibit C**, are Plaintiff's attorneys' time records.  A brief biography of each attorney who performed billed work in this matter is as follows:

Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

Paul Hershan is an associate at Michael Faillace & Associates, P.C.  He graduated from Fordham University School of Law in 2012.  Following law school, he gained extensive trial and appellate litigation experience in the field of criminal law.  Paul served as an

---

[1] The Agreement does include a separate release limited solely to wage and hour claims that includes releasees other than Defendants.  Such narrowly tailored releases are routinely granted in FLSA matters.

Assistant District Attorney with the Bronx County District Attorney's Office for three years, then practiced primarily in the area of criminal defense before joining Michael Faillace & Associates, P.C. in April of 2018.

The requested attorneys' fees and costs in the parties' settlement are reasonable under the circumstances and Plaintiff has agreed to these fees and costs by agreeing to the settlement amount. As a result, the fees should be approved.

**Conclusion**

Plaintiff has been represented by counsel throughout this lawsuit, and Plaintiff's counsel has agreed to the settlement amount based on the approval of his client. Plaintiff's interests have thus been adequately safeguarded.

In full consideration of the issues presented in Cheeks, we believe that the Settling Parties' agreement is fair and reasonable, and that the settlement should be approved. A Stipulation and Proposed Order of Dismissal is included as an attachment to **Exhibit A** for this Court's convenience and consideration.

Thank you for your consideration in this matter.

Respectfully Submitted,

/s/ Michael Faillace
Michael Faillace, Esq.
Michael Faillace & Associates, P.C.
*Attorneys for Plaintiff*

cc:   Carolyn D. Richmond, Esq. (via ECF)
      Jason B. Jendrewski, Esq. (via ECF)
      *Attorneys for Defendants*